UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:13CR09 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| GEZIM SELGJEKAJ, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion of Defendant, Gezim Selgjekaj ("Defendant"), for Judgment of Acquittal or for a New Trial pursuant to Criminal Rules 29 & 33. For the following reasons, the Motion is denied.

## I. FACTUAL BACKGROUND

On January 3, 2013, Defendant was charged, along with Artur Hoxha and Judmir Capoj, in a federal indictment which was part of a broader investigation into the failure of the St. Paul Croatian Federal Credit Union ("Credit Union"), which occurred in April of 2010. The Credit Union was liquidated by the National Credit Union Administration ("NCUA") on April 30, 2010. According to the indictment, Defendant operated numerous business ventures funded by loans fraudulently obtained from the Credit Union with the assistance of its Chief Operating Officer, Anthony Raguz. Over seven years, Defendant obtained approximately $16 million in fraudulent Credit Union loan proceeds by engaging in a scheme using fictitious companies, defunct businesses and accounts of unsuspecting Credit Union members. Defendant was charged with twenty-eight offenses: Conspiracy (To Commit Financial

Institution Fraud and Bribery) (Count 1); Financial Institution Fraud (Counts 2-16); Bribery (Counts 17-22); and Money Laundering (Counts 23-28).

Co-Defendants, Hoxha and Capoj, entered Guilty Pleas prior to trial. On February 6, 2015, Defendant's Jury Trial began. On February 26, 2015, the Jury returned Guilty Verdicts on all but one Bribery Count (Count 21).

## II. LAW AND ANALYSIS

**Motion for Judgment of Acquittal - Fed.R.Crim.P. 29**

"A defendant may move for a judgment of acquittal . . . after a guilty verdict" to argue that there was insufficient evidence to support the verdict. Fed.R.Crim.P. 29(c); *see United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007). "A defendant challenging the sufficiency of the evidence has a very heavy burden." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (internal quotes omitted). "When reviewing an insufficient-evidence claim, [the] court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

"When deciding whether any rational trier of fact could have found the essential elements of the crime, [the] court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Id.* (internal quotes omitted). But a judgment should be "supported by substantial and competent evidence upon the record as a whole." *Id.* Substantial evidence is "more than a scintilla." *Grubbs*, 506 F.3d at 439. Substantial evidence "means such relevant evidence as a reasonable mind might accept to support a conclusion." *Id.* Still, "[c]ircumstantial evidence alone is sufficient to sustain a

conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006).

**Motion for a New Trial - Fed.R.Crim.P. 33**

Under Fed.R.Crim.P. 33, a convicted defendant may request a new trial based on either newly discovered evidence or "other grounds" where the "interest of justice so requires."  While courts have had trouble defining the interest of justice, "it is widely agreed [to exist] where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 361 (6th Cir. 2010) (citing *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)).  Motions for a new trial are strongly "disfavored and should be granted [only] with caution," *United States v. Willis*, 257 F.3d 636, 642 (6th Cir. 2001); so, the defendant bears a high burden to "do more than raise a 'serious suspicion' in order to demonstrate that he is entitled to a new trial." *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008).  In evaluating whether to grant a new trial under Rule 33, the Court has broad discretion, and its decision will not be disturbed absent abuse. *United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009).

A defendant may seek a new trial "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citations omitted).  While the Court has discretion in vacating a guilty verdict, it should only do so where the evidence weighs heavily against the verdict, so as not to undermine the integrity of the judicial system.  *United States v. J.D. Ashworth*, 836 F.2d 260, 266 (6th Cir.1988); see also *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000) ("the [C]ourt may not wholly usurp the jury's role").

**Conspiracy**

At trial, the Government was required to prove each and every one of the following elements beyond a reasonable doubt:

First, that two or more persons conspired or agreed to commit the crimes of financial institution fraud or giving commissions or gifts for procuring loans.

Second, that Defendant knowingly and voluntarily joined the conspiracy.

Third, that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing the conspiracy.

Raguz testified, under oath, about his dealings with Defendant, loans for Defendant's numerous business ventures and the bribes he received from Defendant over the years. (Trial Transcript ("Tr.") ##1160-1189). Defendant provided cash and check bribes in return for loan approvals. (Tr. ##1166-67). Defendant would tell Raguz how the checks would be broken up, i.e., to a company account, to a vendor, or to a bribe payment. (Tr. #1186). Defendant handed Raguz cash bribes in envelopes when they met in the Cleveland branch office, the parking lot or in the stairwell. (Tr. #1168). If Defendant was offering Raguz a check, Defendant (or Hoxha or Capoj at his direction) would sign a check at the Credit Union or would leave an envelope with a notation: "For Tony." (Tr. ##1166-67). Raguz received cash bribes after loan proceeds were disbursed to Defendant. (Tr. #1176).

At times, when the loan balances would get too high and Raguz feared the auditors would be suspicious, Raguz would "reset" the loans. (Tr. #1187). Raguz told Defendant about this process and that he required another account and another account-holder. (Tr. #1184). Defendant would supply the name of a relative, often without their consent. (*Id.*). Defendant's quarterly statements from the Credit Union reflected the loan delinquencies and

the "resets." (Tr. #1187). Raguz further testified that the loans given to Defendant were unauthorized and not in accordance with lending standards. (Tr. ##1299-1300).

Hoxha testified that Defendant sent him to the Credit Union to sign ***blank*** loan documentation and loan proceed checks. "Just don't worry about it. Probably [Tony] will fill them out, probably he was busy or something." (Tr. #841). Regarding large loan balances: "Well, don't worry about [it]. [Tony's] just moving the loans around and he'll fix it. Don't worry." (Tr. #863). Defendant instructed Hoxha: "Don't say too much. Just sign what he gives you." (Tr. ##838-39). Defendant said you need to "take care of [Tony] sometimes." (Tr. #929).

During the time period that Defendant was in prison on other charges, he said to Hoxha: "Just go see Tony and ask for this much or that much." (Tr. #855). Defendant admitted that, while incarcerated, he obtained loans in the names of several businesses and directed Hoxha or his girlfriend, Pamela Goldsmith, to send a portion of the loan proceeds, in amounts from $750 to $1800, to him or other inmates. (Tr. #3523-24).

Government witnesses testified that, over a seven-year span, Defendant obtained approximately $16 million in fraudulent Credit Union loan proceeds. Loan reconstructions and fund analyses showed that Defendant's companies did not have the cash flow to support even the monthly interest payments due on all the loans Defendant received. (See, *e.g.*, Gov't Exhibit #77).

Reviewing the evidence in the light most favorable to the prosecution, the jury could find that the Government proved all the elements of Conspiracy (Count 1) beyond a reasonable doubt; and furthermore, the weight of the evidence does not preponderate against a

guilty verdict.

**Financial Institution Fraud**

At trial, the Government needed to prove the following elements beyond a reasonable doubt:

First, that Defendant knowingly executed or attempted to execute a scheme to defraud a financial institution or to obtain money or other property of the financial institution by means of false or fraudulent pretenses, representations or promises.

Second, the scheme related to a material fact or included a material misrepresentation or concealment of a material fact.

Third, that Defendant had the intent to defraud.

Fourth, that the financial institution was federally insured.

In his Motion, Defendant insists that the Government failed to meet its burden of proof on the Financial Institution Fraud charges.  Defendant argues that he simply requested loans from Raguz for legitimate businesses and retrieved the loan checks from the Credit Union when he was told they were ready.  He argues that it was not fraudulent to use loan proceeds from one account to defray costs of different businesses, not listed on the account. Defendant denies any knowledge that loans were placed in the names of individuals without their knowledge or permission.  He claims that he made loan payments and he argues that the Credit Union never enforced its collection rights.  Defendant insists that he was not privy to Raguz's acts of concealment.

The crux of Defendant's argument is that there was insufficient evidence of intent to defraud to support his conviction on Counts 2 through 16.  However, the evidence belies his

-6-

contentions and the law does not favor his position.

Intent is a question of fact for the jury and the determination that a defendant had the requisite intent should not be lightly overturned. *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007), quoting *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003).

Here, Defendant obtained loans which, for the most part, he never paid back nor had the ability to pay back. He concedes that he often made no payments on his obligations. (Tr. #3501). Yet, he signed promissory notes and disclosure forms, swearing that they were accurate and true and that he would make the required monthly payments.

Defendant denies the bribes to Raguz and denies knowing that Raguz was manipulating loan balances to conceal huge delinquencies. Nonetheless, loan additions, loan balances and "resets" were reflected in the quarterly account statements which Defendant received. Moreover, the Government's documents showed deposits to Raguz's share account were made the same day that Defendant received loan disbursements.

Defendant asserts that he is an Albanian immigrant who came to America in search of the "American Dream;" and the Credit Union and Raguz provided him with the capital to make that dream come true. However, that innocent image is shattered by the testimony, not only of Raguz, but of Hoxha, Capoj, an NCUA analyst and two federal agents, plus voluminous documents.

Once again, viewing the evidence in a light most favorable to the prosecution, the jury could find that the Government proved all the elements of Financial Institution Fraud beyond a reasonable doubt and the weight of the evidence at trial does not preponderate against the verdict of Guilty on Counts 2 through 16.

**Bribery**

At trial, the Government was required to prove the following elements of the offense of Bribery beyond a reasonable doubt:

First, that Defendant gave, offered or promised something of value, in excess of $1,000, to an officer, director, employee, agent or attorney of a financial institution.

Second, that Defendant did so corruptly, with the intent to influence or reward such person in connection with any business or business transaction of that institution.

With regard to the bribery charges, Defendant contends that they are based on the uncorroborated word of Anthony Raguz; and that he himself was in prison or out of the country when certain bribes transpired.

In addition to Raguz's testimony that Defendant paid him bribes in connection with loan additions when they met in the Cleveland branch of the Credit Union, on the stairs and in the parking lot (Tr. #1168), Hoxha and Capoj testified that they were instructed by Defendant to obtain loan proceeds from the Credit Union in his stead and to leave checks behind for Raguz.  (Tr. ##847-50 & Tr. ##2884-85, 2890).

Hoxha testified that Defendant told him "how you got to take care of [Tony] sometimes."  (Tr. #929).  In addition, the jury heard the testimony of Aziz Ukshini:

Q.  Did he tell you anything to do for Tony?

A.  I mean, yeah.  We have to, you know, we have to take care of him.

Q.  Who said we have to take care of him?

A.  Him, the defendant.

Q.  And what does it mean to take care of Tony?

> A.  Bribe him, you know.

(Tr. #2590).

Documentary evidence was provided to the jury in order to further bolster the bribery charges.  Loan additions and "reset" amounts were reflected on the quarterly account statements received by Defendant.  The bribes, which facilitated the creation of loan accounts for Defendant or his companies, and which coincided with the disbursement of proceeds to Defendant or his agents, are demonstrated by loan reconstructions and analyses performed by the NCUA analyst and two Special Agents.  (See, *e.g.*, Gov't Exhibits 5Z, 5J at p.3, 5Y at p.13, 36 at p.84).

Defendant took the stand and told the jury that he did not intend to defraud the Credit Union and that he did not bribe Anthony Raguz.  The trier-of-fact, alone, determines credibility; and the jury was free to disbelieve Defendant's protestations and innocent explanations.  See *United States v. Schreane*, 331 F.3d 548 (6th Cir. 2003).

The Court has reviewed the evidence on the Bribery Counts and is convinced that Defendant has not met his burden under Fed.R.Crim.P. 29 and Fed.R.Crim.P. 33 justifying acquittal or a new trial on any of the bribery convictions.

**Money Laundering**

The Government was obligated to prove the following elements of the offense of Money Laundering beyond a reasonable doubt:

First, that Defendant knowingly engaged or attempted to engage in a monetary transaction.

Second, that the monetary transaction was improperly derived from specified unlawful

activity.

Third, that the property had a value greater than $10,000.

Fourth, that Defendant knew that the transaction was in criminally derived property.

And fifth, that the monetary transaction took place within the United States.

In his Motion, Defendant asserts quite simply that, since the evidence was insufficient to sustain the Financial Institution Fraud and Bribery, then the evidence is insufficient to prove that he engaged in a monetary transaction in property that was criminally derived. Based upon the Court's consideration of the evidence and the standard of review mandated by Criminal Rules 29 and 33, the Court finds that Defendant's argument on the Money Laundering charges is unavailing.

### III. CONCLUSION

For all these reasons, the Motion of Defendant, Gezim Selgjekaj, for Judgment of Acquittal or for a New Trial pursuant to Criminal Rules 29 & 33 is denied.

**IT IS SO ORDERED.**

                                              **s/ Christopher A. Boyko**
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

**Dated:  September 3, 2015**